UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JUAN S., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. C20-5644-BAT <br><br> **ORDER AFFIRMING THE COMMISSIONER** |

Plaintiff Juan S. seeks review of the denial of his application for Disability Insurance Benefits. He contends the ALJ erred in evaluating the medical opinions, in finding that his mental impairments were not severe and did not meet a listing, and in evaluating his residual functional capacity. Dkt. 20. The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

**DISCUSSION**

At issue in this case is plaintiff's claim for a closed period of disability, from the amended alleged onset date of March 23, 2014, to the date he returned to work, September 17, 2017. Dkt. 20 at 3. This is the second time this case has come before this Court. In the previous decision, this Court remanded the case for further consideration of the medical opinions addressing plaintiff's mental health impairments and plaintiff's need for a cane. Tr. 945-54. In

ORDER AFFIRMING THE COMMISSIONER - 1

1  this appeal, plaintiff again challenges the ALJ's assessment of the opinions regarding his mental

2  impairments, as well as the physical limitations in the RFC finding.

3   **A.  Mental health impairments**

4  Plaintiff argues that the ALJ erred by "failing to give weight" to plaintiff's diagnoses of

5  major depression and anxiety. Dkt. 20 at 4. But a diagnosis alone does not establish either the

6  severity of an impairment or any specific functional limitations caused by the impairment. "The

7  mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10

8  F.3d 678, 680 (9th Cir. 1993) (citing *Sample v. Schweiker*, 694 F. 2d 639, 642-43 (9th Cir.

9  1982)). The ALJ evaluated plaintiff's mental impairments at step two and found that he had the

10  medically determinable mental impairments of major depressive disorder, generalized anxiety

11  disorder, panic disorder, and post-traumatic stress disorder, but that these impairments, singly

12  and in combination, did not cause more than a minimal limitation in plaintiff's ability to perform

13  basic work activities and were therefore not severe. Tr. 894-96. The ALJ did not err by failing to

14  "give weight" to plaintiff's diagnoses.

15  Plaintiff also argues that the ALJ misevaluated the medical opinions related to his mental

16  impairments, including the opinions of Mary Lang-Furr, M.D., Rebecca C. Hendrickson, M.D.,

17  Douglas P. Robinson, M.D., Phillip Perkins, D.O., and Theodore Georgis, M.D. Dkt. 20 at 4-9.

18  The ALJ found, based on the medical opinions, that plaintiff had mild limitations in each of the

19  four functional areas, resulting in the finding that his mental impairments were non-severe.[1] Tr.

20  896.

21

22  [1] When evaluating whether a mental impairment is severe, the ALJ must rate the degree of
functional limitation resulting from the impairment in four broad areas: (1) understand,
23  remember, or apply information, (2) interact with others, (3) concentrate, persist, or maintain
pace, and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c). If the ALJ rates the degree of
functional limitation in these areas as "none" or "mild," the ALJ will generally find the

ORDER AFFIRMING THE COMMISSIONER - 2

In general, the ALJ must give specific and legitimate reasons for rejecting a treating or examining doctor's opinion that is contradicted by another doctor, and clear and convincing reasons for rejecting a treating or examining doctor's uncontradicted opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

   1.   *Dr. Lang-Furr*

Dr. Lang-Furr examined plaintiff in May 2011. She diagnosed major depressive disorder, severe, with psychotic features, PTSD, and generalized anxiety disorder and assigned a GAF score of 45, indicating serious symptoms or a serious impairment in social, occupational, or school functioning. Tr. 625; Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 34 (4th ed. text rev. 1994). She opined that plaintiff would be able to perform simple and repetitive tasks and could probably also perform detailed and complex tasks; he could relate well to other people including supervisors, coworkers, and the public; he could perform work activities on a consistent basis, maintain regular attendance in the workplace, and complete a normal work day and work week without interruptions from his psychiatric condition; and could deal well with the usual stress encountered in a competitive work environment. Tr. 625-26.

The ALJ noted that Dr. Lang-Furr's assessment took place 18 months before the amended alleged onset date and found it to be of little relevance in assessing plaintiff's mental

---

impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the plaintiff's ability to do basic work activities. 20 C.F.R. § 404.1520a(d).

functioning during the relevant period. Tr. 894. The ALJ nevertheless gave her findings great weight due to their consistency with the mental examination findings and the opinions of Dr. Hendrickson and Dr. Robinson. Tr. 895.

Plaintiff points to Dr. Lang-Furr's statements that plaintiff would likely have difficulty with things that require a broader fund of knowledge as plaintiff's was fairly low, that he would do better receiving both verbal and written instructions as his spelling was poor and he had only half recall in short-term memory, and that he required repetition and clarification of instructions and required frequent redirection. Tr. 626; Dkt 20 at 4. The ALJ is responsible for "translating and incorporating" an opinion into a succinct finding. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). A plaintiff does not establish error by merely pointing to specific language that the ALJ did not discuss without identifying how that omission was harmful error. Given Dr. Lang-Furr's assessment of plaintiff's functional abilities, including the ability to perform simple and repetitive tasks, relate well to others, and sustain regular work activities and attendance, the ALJ could rationally interpret the statements plaintiff has identified as consistent with mild functional limitations. Plaintiff has not established error in the ALJ's assessment of Dr. Lang-Furr's opinion.

*2.     Dr. Hendrickson*

Dr. Hendrickson examined plaintiff in December 2012. She diagnosed major depressive disorder, severe, and generalized anxiety disorder and assigned a GAF score of 25, indicating behavior considerably influenced by delusions or hallucinations, serious impairment in communication or judgment (including suicidal preoccupation), or inability to function in almost all areas. Tr. 649; DSM-IV at 34. She opined that plaintiff had the ability to perform simple and repetitive tasks and detailed and complex tasks if he is motivated to do to; he would be able to

ORDER AFFIRMING THE COMMISSIONER - 4

accept instructions from supervisors and interact with coworkers and the public; he would be able to perform work activities on a consistent basis with additional supervision if he were able to physically do the activities; he would be able to maintain regular attendance and complete a normal workday and workweek without interruptions from his psychiatric condition, with the caveat that she worried about his risk of suicide over the following year; and he would likely deal somewhat poorly with the usual stress encountered in the competitive workplace but would probably be able to function enough to keep his job. Tr. 649-50.

The ALJ found that Dr. Hendrickson's functional assessment was similar to Dr. Lang-Furr's, that she stated that the likelihood of improvement was good with appropriate treatment, and that while she noted a possible suicide risk, she felt plaintiff would be able to maintain a full time work schedule on a regular and continuing basis without interruption from a mental health condition. Tr. 895. The ALJ gave Dr. Hendrickson's opinion great weight, finding that it was consistent with Dr. Lang-Furr's and Dr. Robinson's opinions and with the mental status examination findings. Tr. 895.

Plaintiff asserts that the ALJ failed to discuss Dr. Hendrickson's statements that plaintiff would deal somewhat poorly with the stress of a competitive work environment and that he would likely need additional support to function at home if he were working. Dkt. 20 at 6. Again, a plaintiff does not establish error by merely pointing to specific language that the ALJ did not discuss without identifying how that omission was harmful error. Here, one of the statements plaintiff identifies concerns plaintiff's functioning at home, and the other is followed by an opinion that plaintiff would be able to maintain employment despite the doctor's concern. Plaintiff has not established error in the ALJ's failure to discuss these aspects of Dr. Hendrickson's opinion.

Plaintiff also asserts that the ALJ erred by failing to discuss the low GAF score Dr. Hendrickson assigned. Dkt. 20 at 6. A GAF score is a one-time snapshot of a person's functioning and can include factors other than functional limitations caused by medically determinable severe impairments, such as financial stressors. DSM-IV at 34. A GAF score may be relevant evidence of an individual's overall level of functioning, but the ALJ's assessment of the medical record is not deficient solely because it does not reference a particular GAF score. *Florence v. Astrue*, No. EDCV 08-0883-RC, 2009 WL 1916397, at *6 (C.D. Cal. July 1, 2009) (unpublished opinion) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)). Dr. Hendrickson assessed this GAF score more than a year before the amended alleged onset date. She was concerned about plaintiff's risk of suicide in the year following her evaluation, but nevertheless believed he could function at work and maintain employment. The ALJ noted Dr. Hendrickson's concern about plaintiff's risk of suicide and her belief that he could nevertheless maintain employment. The ALJ's decision is not flawed for failing to discuss the GAF score Dr. Hendrickson assessed. Plaintiff has not established that the ALJ erred in assessing Dr. Hendrickson's opinion.

       3.       *Dr. Robinson*

Dr. Robinson examined plaintiff in July 2013 and diagnosed panic disorder with agoraphobia. Tr. 851. On mental status examination, he found memory and cognitive function were normal. *Id.* He opined that symptom exaggeration was evident and that plaintiff was not depressed but was unhappy about his circumstances, which Dr. Robinson described as a normal mental state in response to stressors such as financial difficulties. Tr. 853. He opined there were no work restrictions required as a result of plaintiff's psychiatric condition, and that plaintiff was able to work on a reasonably continuous basis in a similar pattern to that before his workplace

1  injury as far as his psychiatric condition was concerned. Tr. 854. The ALJ gave Dr. Robinson's
2  opinion great weight, finding that it was consistent with Dr. Lang-Furr's and Dr. Hendrickson's
3  opinions and with the mental status examination findings. Tr. 895.

4  Plaintiff points to various aspects of Dr. Robinson's assessment, primarily related to the
5  fact that the assessment was for purposes of plaintiff's Labor and Industries claim and Dr.
6  Robinson could not connect plaintiff's pre-existing mental conditions with his industrial injury.
7  Dkt. 20 at 6. Plaintiff asserts that this fact does not allow the ALJ to "self-interpret" the record
8  for the sake of a denial. *Id.* at 7. But plaintiff does not explain this statement or otherwise allege
9  error in the ALJ's assessment of the opinion. The Court finds no error in the ALJ's assessment of
10 Dr. Robinson's opinion.

11 *3.  Dr. Perkins and Dr. Georgis*

12 Plaintiff describes the results of a psychiatric examination by Dr. Perkins and a physical
13 examination by Dr. Georgis but makes no arguments about the ALJ's findings related to these
14 opinions. Merely presenting the evidence in a more favorable light to the plaintiff is insufficient
15 to establish error in the ALJ's decision. *Thomas*, 278 F.3d at 954. Moreover, the Court may
16 deem arguments that are unsupported by explanation to be waived. *See Avila v. Astrue*, No. C07-
17 1331, 2008 WL 4104300 (E.D. Cal. Sept. 2, 2008) at *2 (unpublished opinion) (citing *Nw.*
18 *Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 923-24 (9th Cir. 1996) (party who
19 presents no explanation in support of claim of error waives issue)). By failing to make any
20 arguments related to these opinions, plaintiff has waived any challenge to the ALJ's assessments
21 of them.

ORDER AFFIRMING THE COMMISSIONER - 7

*4.     Community college attendance*

The ALJ found that plaintiff had mild restriction in the ability to understand, remember, and apply information. Tr. 896. As support for this finding, the ALJ found that plaintiff attended community college in 2013, which required the ability to understand, remember, and apply information and which reflected greater abilities than plaintiff alleged. *Id.* Plaintiff argues that this finding is misleading because he was actually struggling to obtain his GED at that time and he failed in this attempt because he was unable to understand, remember, or apply the information needed to do so. Dkt. 20 at 9. Plaintiff points to his testimony at the first hearing, where he testified that he tried to finish his GED at community college but he couldn't concentrate and failed the examination several times. Tr. 46. He reported elsewhere that he completed two years of college in 2013. Tr. 322.

The ALJ's finding noted the fact of plaintiff's community college attendance, as confirmed by plaintiff's own statements, and found only that his ability to do so contradicted his allegations of more severe limitations in the ability to understand, remember, and apply information. The ALJ never stated that plaintiff obtained a degree at community college or made any other misleading findings about plaintiff's attendance at community college. In addition, the ALJ also relied on the consultative examiners' finding that plaintiff would have no difficulty following simple instructions to carry out simple tasks. *Id.* This finding alone would support the ALJ's conclusion that plaintiff had only mild limitations in this area, making any error in the ALJ's assessment of his community college attendance harmless. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (error is harmless where it is inconsequential to the ALJ's ultimate nondisability determination). Plaintiff has not established harmful error in the ALJ's assessment

of his community college attendance or in his ability to understand, remember, and apply information.

### 5. *Listings*

Plaintiff argues that the ALJ should have found that his mental impairments met or equaled Listings 12.04 and 12.06 for depression and anxiety. Dkt. 20 at 13. The listings describe specific impairments that are considered "severe enough to prevent an individual from doing any gainful activity regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). A claimant whose impairments either meet or equal a listing is presumptively disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a).

To meet or equal listings 12.04 and 12.06, a claimant must satisfy the diagnostic criteria listed in paragraph A and the functional limitations listed in either paragraph B or paragraph C. 20 C.F.R. pt. 404, subpt. P app. 1, §§ 12.04, 12.06. Paragraph B requires either an extreme limitation in one of the four functional areas or marked limitations in two of them. *Id.* Paragraph C requires a documented history of the disorder for at least two years and both ongoing treatment or support that diminishes the signs and symptoms and marginal adjustment. *Id.*

Plaintiff argues that he met the listings because he exhibited sleep disturbance, decreased energy, thoughts of suicide, feelings of worthlessness, difficulty concentrating, agoraphobia, panic attacks, and disproportionate fear and anxiety. Dkt. 20 at 13. Plaintiff's argument focuses on the diagnostic criteria but does not address the paragraph B criteria or the paragraph C criteria other than to assert that his impairments lasted for more than two years. But the ALJ found, at step two, that plaintiff had mild limitations in all four of the paragraph B functional areas and that his mental impairments were therefore not severe. Tr. 896. The Court considered and rejected plaintiff's challenges to the ALJ's assessment of his mental impairments at step two.

ORDER AFFIRMING THE COMMISSIONER - 9

1  Because plainitff's mental impairments were not severe, the ALJ was not required to analyze
2  whether they met the listings at step three. Plaintiff has not established that the ALJ erred in
3  evaluating his mental impairments, in finding them non-severe, or in not including limitations
4  due to these non-severe impairments in the RFC finding.

     6. *Duty to develop the record*

6    Plaintiff asserts that if there was a question about the ongoing nature of his mental health
7  limitations, the ALJ had a duty to develop the record. Dkt. 20 at 14. But the ALJ's duty to
8  develop the record is triggered only when there is ambiguous evidence or when the ALJ finds
9  that the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan v.*
10 *Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Here, the evidence was not ambiguous and was
11 sufficient to allow for proper evaluation. The ALJ's duty to develop the record was not triggered.

12   **B.** **Physical RFC**

13   Plaintiff argues that the ALJ erred in assessing his physical RFC by not considering his
14 degenerative disc disease as documented in physical therapy treatment notes and by improperly
15 giving weight to an Independent Medical Examination over the opinion of treating doctor Daniel
16 Chilczuk, M.D. Dkt. 20 at 9.

17   Although plaintiff asserts that the ALJ did not consider plaintiff's degenerative disc
18 disease, the ALJ found this to be a medically determinable severe impairment and assessed
19 functional limitations due to this impairment. Tr. 893, 897. Plaintiff refers to physical therapy
20 treatment notes that he asserts show that he still required treatment as recently as 2016 and that
21 his condition had worsened. Dkt. 20 at 9, 11. But the ALJ noted that plaintiff underwent physical
22 therapy after his spinal fusion surgery, citing to these treatment notes. Tr. 901, 717-94. The ALJ
23 noted that the August 2015 physical therapy discharge summary assessed plaintiff's capability at

sedentary to light work. Tr. 717. Plaintiff does not explain how the ALJ erred in assessing these treatment notes, and the fact that plaintiff was undergoing physical therapy does not establish any specific functional limitations. Plaintiff has not established error in the ALJ's RFC finding by referring to physical therapy treatment notes.

Dr. Curcin and Dr. Kamath conducted an IME for plaintiff's L&I claim in November 2015. They opined that after spinal fusion surgery plaintiff's condition was fixed and stable, there was no increase in impairment rating from previous IMEs, and plaintiff could return to his prior medium-level work without restrictions. Tr. 871. The ALJ found that although she had concluded that plaintiff could not perform his past medium-level job, the November 2015 IME opinion was nevertheless a valuable tool in assessing whether plaintiff could perform other light work after his surgery. Tr. 901.

In a letter dated January 18, 2016, Dr. Chilczuk stated that he disagreed with the rating in the November 2015 IME. Tr. 803. Dr. Chilczuk opined that, based on the surgeries plaintiff had had on his back, it "did not make any sense" for plaintiff to continue to be rated in the same category as before his spinal fusion. *Id.* Dr Chilczuk also disagreed with the finding that plaintiff could return full-time to regular duties. *Id.* It does not appear that the ALJ discussed this letter from Dr. Chilczuk.

Plaintiff argues that the ALJ erred by giving weight to the IME and failing to consider or properly analyze the rebuttal letter from Dr. Chilczuk. Dkt. 20 at 10. But the ALJ gave weight to the IME only to the extent it was useful to assess plaintiff's ability to perform light work. Dr. Chilczuk disputed aspects of the IME that the ALJ also discounted—the L&I rating level given by the IME doctors, a concept that is not applicable in the Social Security disability context, and the opinion that plaintiff could return to his past work, which the ALJ also disagreed with.

ORDER AFFIRMING THE COMMISSIONER - 11

Moreover, as the ALJ noted, in a letter date January 11, 2016—one week before the letter plaintiff discusses—Dr. Chilczuk opined that plaintiff could return to work in a light-duty type of position. Tr. 804, 904. Even if the ALJ had given Dr. Chilczuk's January 18, 2016, letter full weight, it would not have changed the ALJ's assessment of the IME or plaintiff's ability to perform light work. Any error in the ALJ's failure to discuss or give weight to this letter is harmless. *Molina*, 674 F.3d at 1122 (9th Cir. 2012). Plaintiff has not established that the ALJ committed harmful error in assessing his physical RFC.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 18th day of March, 2021.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge